UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **NANCY ROBERTS** and **GEORGE ROBERTS, TRUSTEES OF THE GEORGE TUDOR STRONG ROBERTS AND NANCY JANE ROBERTS CHAPTER 11 ESTATE**,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>**THE HEATING SPECIALIST INC., ROBERT GORDON,** and **IRS ENVIRONMENTAL OF PORTLAND, INC.**,<br><br>　　　　　　Defendants. | Case No. 3:12-CV-01820-SI<br><br>**OPINION AND ORDER ON DEFENDANT THE HEATING SPECIALIST INC.'S MOTION FOR SUMMARY JUDGMENT** |

Kenneth P. Dobson, Chenoweth Law Group, PC, 510 S.W. Fifth Avenue, Fifth Floor, Portland, OR 97204. Attorney for Plaintiffs.

Gregory W. Byrne, 4248 Galewood Street, Lake Oswego, OR 97035.  Attorney for Defendant The Heating Specialist Inc.

**SIMON, District Judge.**

　　　　Defendant The Heating Specialist Inc. ("THS") moves for summary judgment in this contribution action under the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675. Dkt. 30. For the reasons that follow, the Court DENIES this motion.

# BACKGROUND[1]

Nancy Roberts and George Strong Roberts bought a house in Oregon City in 2010 that they intended to use as a rental property. Because the house was nearly one hundred years old, they made certain upgrades before seeking renters.[2] In particular, Mrs. Roberts hired THS in February 2011 to replace the old boiler system in the basement. No one was living in the house at the time.[3]

In late March 2011, a prospective renter of the house saw what appeared to be visible beads of mercury on the property and called the Clackamas County Fire Department. The Oregon Department of Environmental Quality ("ODEQ") was also notified, the ODEQ contacted Mrs. Roberts, who hired a contractor to remove the mercury. After the contractor supposedly completed that work, however, mercury was still found at the site, and ODEQ requested the assistance of the federal Environmental Protection Agency ("EPA").[4] The EPA found beads of mercury in front of the detached garage and in the basement "directly adjacent to a new boiler," but nowhere else the house.[5] The EPA also detected mercury vapors around the driveway area, in the basement, and along a walkway between the driveway and the basement door. No mercury vapors were detected along the other three sides of the house or in the backyard. The mercury

---

[1] As described more fully below, in reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Clicks Billiards, Inc. v. Sixshooters, Inc.,* 251 F.3d 1252, 1257 (9th Cir. 2001).

[2] Decl. Nancy Roberts, Dkt. 43, at ¶¶ 1-2, 5; Decl. Kenneth Dobson, Ex. 1, Dkt. 38-1.

[3] Decl. Nancy Roberts, Dkt. 43, at ¶¶ 3, 5.

[4] Decl. Kenneth Dobson, Ex. 2 (hereafter "Decl. Jeff Fowlow"), Dkt. 38-2, at ¶ 5.

[5] Decl. Jeff Fowlow, Dkt. 38-2, at ¶ 6.

contamination was largely confined to the basement and driveway area in front of the detached garage.[6]

The EPA's assigned on-scene coordinator ("OSC") for the Roberts' property, Jeff Fowlow, estimated that about four fluid ounces of mercury had been spilled on the driveway.[7] In his report, Fowlow explained:

> In February 2011, Mrs. Roberts hired a contractor, Dave Brent, to replace a boiler that was located in the basement of her property. I believe that in the process of removing the old boiler . . . , a component of the boiler which contained mercury was broken and a small amount of mercury leaked onto the concrete floor of the basement. Mr. Brent removed the old boiler through an outside access door from the basement, up a small flight of stairs, and onto an asphalt-paved driveway located on the side of the Roberts house and in front of her driveway. While loading the old boiler into a work truck, additional mercury was released onto the driveway.[8]

In a separate action, the EPA is seeking reimbursement under CERCLA against the Roberts in their pending Chapter 11 bankruptcy proceeding for environmental cleanup costs related to the mercury contamination. Plaintiffs Nancy Roberts and George Strong Roberts and the Trustees of their Chapter 11 estate (collectively, "Plaintiffs") brought this action for a determination under Section 113 of CERCLA that the defendants should bear a portion of the CERCLA liability. *See* 42 U.S.C. § 9613(f)(1).

Defendant THS has moved for summary judgment, arguing that there is no genuine dispute that the old boiler system did not contain mercury. In support of its motion, THS submitted the declaration of David Brent, stating that he was present when the old boiler was

---

[6] Decl. Jeff Fowlow, Dkt. 38-2, at ¶ 6; *see also* Decl. Kenneth Dobson, Ex. 3, Dkt. 38-3 (EPA contractor's map of mercury contamination at the property).

[7] Decl. Jeff Fowlow, Dkt. 38-2, at ¶¶ 1, 4.

[8] Decl. Jeff Fowlow, Dkt. 38-2, at ¶ 4.

replaced on February 17, 2011 and that neither the old boiler and its associated components, nor the new boiler and its associated components, contained mercury.[9]

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986); *see also Clicks Billiards, Inc. v. Sixshooters, Inc.,* 251 F.3d 1252, 1257 (9th Cir. 2001) (holding that a court, when reviewing a motion for summary judgment, must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citation omitted).

## DISCUSSION

THS has moved for summary judgment solely on the basis of Brent's declaration that the old boiler did not contain mercury. THS argues that "[t]o present a genuine issue of material fact[,] plaintiffs must now produce competent evidence from which a jury can find that, contrary

---

[9] Decl. David Brent, Dkt. 34, ¶ 6.

to eyewitness testimony by an experienced, qualified and licensed boiler engineer, the system did contain mercury." Def.'s Mem. Supp. Mot. Summ. J., Dkt. 32, at 3. In response, Plaintiffs have done precisely that.

### A.    *Declaration of Jeff Fowlow*

Plaintiffs have submitted a portion of a declaration prepared by Jeff Fowlow, the OSC for the EPA's response to the mercury incident at the Roberts' property. *See* Dkt. 38-2. The declaration was filed in federal court in the District of Oregon in a related proceeding in which the EPA sought an administrative warrant to enter the contaminated property and restore the site using its own contractors. *See* Decl. Kenneth Dobson, Dkt. 38, at ¶ 3; *see generally In re Admin. Warrant for 909 Wash. St.*, Case No. 11-mc-09100 (D. Or. 2011). Fowlow's declaration summarizes the results of the EPA's investigation at the site. These results include the discovery of mercury beads in front of the garage and in the basement, as well as a concentration of mercury vapors in the driveway area, the garage, the basement, and the side of the house between the basement door and the driveway. *See* Decl. Jeff Fowlow, Dkt. 38-2, at ¶ 6. Fowlow also concluded from these facts that the most likely source of contamination was the removal of the old boiler system. *Id.* ¶ 4. Even if the Court were to set aside the portion of the declaration containing Fowlow's conclusions, a reasonable jury still could infer from the EPA's testing results that the source of the mercury originated in the basement and was carried out the back door to the driveway (or *vice versa*), notwithstanding the Brent Declaration.

THS objects to the Fowlow declaration because it is not based on personal knowledge, does not set out facts that would be admissible in evidence, and does not show that the declarant is competent to testify about the matters asserted. *See* Fed. R. Civ. P. 56(c)(4). The Fowlow

OPINION AND ORDER, Page 5

declaration was not, however, submitted *as* a declaration in opposition to a motion for summary judgment, but instead as substantive evidence to be offered at trial. THS's objection more properly falls under Rule 56(c)(2): at the summary judgment stage, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Plaintiffs argue that the Fowlow declaration would be admissible because it falls within the public records exception to hearsay. *See* Fed. R. Evid. 803(8). The Court agrees.[10]

Under Federal Rule of Evidence 803(8), the exclusion of hearsay evidence does not apply to "[a] record or statement of a public office if . . . it sets out . . . in a civil case . . . factual findings from a legally authorized investigation; and . . . neither the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A)(iii), (B). Under this rule, federal courts have admitted the reports of OSCs and similar EPA documents in CERCLA actions. *See, e.g.*, *United States v. Saporito*, 684 F. Supp. 2d 1043, 1048-49 (N.D. Ill. 2010) (receiving EPA reports and action memoranda); *Southwire Co. v. Ramallo Bros. Printing, Inc.*, 540 F. Supp. 2d 307, 310 (D.P.R. 2008) (receiving EPA order); *United States v. Summit Equip. & Supplies, Inc.*, 805 F. Supp. 1422, 1430 (N.D. Ohio 1992) (receiving OSC report); *United States v. Shaner*, No. Civ. A. 85-1372, 1990 WL 115085, at *11 (E.D. Pa. June 25, 1990) (OSC report); *see also United States v. Northernaire Plating Co.*, 670 F. Supp. 742, 734-44 (W.D. Mich. 1987), *aff'd sub nom. United States v. R.W. Meyer, Inc.*, 889 F.2d 1497 (6th Cir.

---

[10] This conclusion does not preclude any Defendant from challenging the admissibility of the evidence at trial or at the pretrial conference. The Court need not and does not address at this time the question of authentication. *See, e.g.*, Fed. R. Evid. 902. For summary judgment purposes, the Court accepts Kenneth Dobson's declaration regarding the origin of the Fowlow declaration and also notes that the signature page of the Fowlow declaration has been submitted to the Court. The Court finds these representations sufficient, at this stage, to demonstrate that the evidence, if otherwise admissible, could be presented in a suitable form at trial.

1989) (accepting declaration, for summary judgment purposes, from EPA official summarizing EPA and state environmental reports).

Although Plaintiffs rely on Fowlow's declaration prepared on behalf of the EPA and not on the official OSC report, the public records hearsay exception is not so confining. Under this rule, courts have admitted affidavits, letters, and other less formal documents that summarize agency investigations and assert agency conclusions. *See Johnson v. City of Pleasanton*, 982 F.2d 350, 352-53 (9th Cir. 1992) (holding that district court erred in declining to admit city official's affidavit and associated staff reports regarding investigation of plaintiff); *S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 742-43 (N.D. Cal. 2011) (concluding that handwritten report of telephone conversations compiled by state official was presumptively admissible); *Osprey Ship Mgmt. v. Jackson Cnty. Port Auth.*, No. 1:05CV390, 2008 WL 282267, at *3 (S.D. Miss. Jan. 29, 2008) (admitting affidavit of deceased official explaining agency's position regarding its prior survey results); *Sabel v. Mead Johnson & Co.*, 737 F. Supp. 135, 140-44 (D. Mass. 1990) (admitting letter written by FDA official summarizing research and stating opinion in terms of agency's consensus); *Revlon, Inc. v. Carson Prods. Co.*, 602 F. Supp. 1071, 1079-90 (S.D.N.Y. 1985), *aff'd* 803 F.2d 676 (Fed. Cir. 1986) (admitting official's affidavit stating findings based on agency investigation). This broad application of Rule 803(8) reflects the drafters' intention for the rule to "assume[] admissibility in the first instance but with ample provision for escape if sufficient negative factors are present." Fed. R. Evid. 803(8) advisory committee's note. Thus, admissibility under Rule 803(8)(A) sweeps broadly but is then tested under Rule 803(8)(B)'s requirement that "neither the source of information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B); *see, e.g.*, *S.F.*

*Baykeeper*, 791 F. Supp. 2d at 743-44 (declining to admit report under Rule 803(8)(B) because it did not bear indicia of trustworthiness even though the handwritten report was presumptively admissible).

THS bears the burden of establishing the Fowlow declaration's lack of trustworthiness under Rule 803(8)(B). *Johnson*, 982 F.2d at 352 ("The trial court is entitled to presume that the tendered public records are trustworthy. . . . A party opposing the introduction of a public record bears the burden of coming forward with enough negative factors to persuade a court that a report should not be admitted."). THS has not argued that the declaration is untrustworthy, only that it is not admissible. Nonetheless, the Court has independently considered whether there are indications that the Fowlow declaration may not be trustworthy.

The Advisory Committee for the Federal Rules of Evidence has suggested four non-exclusive factors that may be relevant to this inquiry: "(1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 n.11 (1988) (summarizing Advisory Committee's notes).  The Court notes that Fowlow, as OSC, directed and coordinated the interagency response to the mercury spill at the Roberts' property. His declaration was prepared on April 12, 2011, less than three weeks after the spill was first reported. Although the declaration was prepared for litigation, it was not prepared for this litigation involving THS, thereby reducing the likelihood of bias against this Defendant. Particularly given the lack of any argument or evidence to the contrary submitted by THS, the Court finds that the Fowlow declaration bears sufficient indicia of trustworthiness at this stage of the proceedings. The Court thus holds that the declaration is admissible for

summary judgment purposes under Rule 803(8).

THS's arguments to the contrary are not persuasive. THS argues that the declaration is not based on Fowlow's personal knowledge, but the public record hearsay exception applies equally to documents that summarize first-hand knowledge of others who had a duty to report to the declarant. *See United States v. Cent. Gulf Lines, Inc.*, 974 F.2d 621, 626-27 (5th Cir. 1992); *Robbins v. Whelan*, 653 F.2d 47, 52 (1st Cir. 1981); *see also* 5 WEINSTEIN'S FEDERAL EVIDENCE § 803.10[3][a] (2d ed. rev. 2013) ("[G]overnment officials may rely on colleagues or subordinates who have the requisite [personal] knowledge."). The Fowlow declaration summarizes evidence gathered directly by other EPA employees and contractors as part of an official investigation and thus appropriately relies on the agency's collective first-hand knowledge.

THS also challenges Fowlow's conclusion that the mercury spill was likely caused by the replacement of the boiler. The Supreme Court has emphasized, however, that the public records hearsay exception applies not just to facts and data, but also to "portions of investigatory reports . . . [that] state a conclusion or opinion." *Beech Aircraft*, 488 U.S. at 170. The Supreme Court reasoned that Rule 803(8)(B)'s "trustworthiness inquiry—and not an arbitrary distinction between 'fact' and 'opinion'—was the [Advisory] Committee's primary safeguard against the admission of unreliable evidence." *Id.* at 167. Other evidentiary safeguards, such as rules regarding relevance and prejudice, "provide the court with additional means of scrutinizing and, where appropriate, excluding evaluative reports or portions of them." *Id.* at 167-68. In addition, an agency's conclusions, admitted under Rule 803(8), are still "subject to the ultimate safeguard—the opponent's right to present evidence tending to contradict or diminish the weight

of those conclusions." *Id.* at 168.

Although Fowlow's conclusions are presumptively admissible, the Court need not resolve the question of its admissibility at trial at this stage. Drawing all reasonable inferences in favor of Plaintiffs, a reasonable factfinder could conclude that the mercury spill was caused by the replacement of the old boiler based just on the raw data described in the Fowlow declaration and on Plaintiffs' additional evidence that the old boiler likely contained mercury, to which the Court now turns.

      *B.      Additional Declarations*

In addition to the Fowlow declaration, Plaintiffs have submitted declarations from three prior owners of the house, dating back to 1995 or 1996, all of whom stated that they did not replace the boiler or any of its component parts. *See* Dkt. 40-42. Plaintiffs also made a public records request to the Building Codes Division of the Oregon Department of Consumer and Business Affairs, which confirmed that the only record for the property regarding boiler or boiler system components is THS's February 2011 application to install a new boiler. Decl. Kenneth Dobson, Dkt. 38, at ¶ 6 & Ex. 5. According to a declaration submitted by Plaintiffs' engineering expert Jeff O'Neal, "[d]igital boiler controls that do not contain mercury started to become commonly used around 2000. However, mercury containing boiler controls were still manufactured as late as 2007." Decl. Jeff O'Neal, Dkt. 39, at ¶ 7. From this evidence, a reasonable factfinder could draw the inference that the old boiler system dated from an era when boiler components often contained mercury.

O'Neal also stated that he inspected the property in February 2013 and observed an "Aquastat" still in place. The Aquastat, which contains elemental mercury, appeared to be a

remnant of the old boiler system. *See id.*¶ 5; *see also id.* Exs. 3-5 (photographs taken by O'Neal of the Aquastat in the house's basement). The presence of the Aquastat in the basement, combined with the prevalence of mercury in older boiler systems, would allow a reasonable jury to conclude that the old boiler likely contained mercury.[11]

      THS argues that such reasoning is "pure speculation," citing *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216 (9th Cir. 1995). *Triton Energy* was a product liability action in which the allegedly defective product had been destroyed before either party's experts could examine it. Unlike in *Triton Energy*, Plaintiffs do not have to establish that this particular boiler was defective in an unusual way; to the contrary, they are attempting to establish that the old boiler was *not* unusual compared to other boilers of its era. They have presented enough expert and circumstantial evidence to raise a triable issue of fact as to whether the old boiler contained mercury. Combined with the data summarized in the Fowlow declaration, the timing of the discovery of the contamination approximately one month after the boiler's replacement, and the lack of use or occupancy of the property during the interim, a reasonable jury could conclude that the removal of the boiler was the most likely cause of the mercury contamination.[12]

---

[11] THS argues that the presence of the Aquastat does not indicate that the spill was caused by THS because the Aquastat is still intact and could not itself be the source of the mercury. Def.'s Reply Mem. at 5. The relevance of the Aquastat, however, is that it supports the inference that *other* components of the old boiler system that were removed did contain mercury. It also casts doubt on Brent's blanket assertion that "[t]he boiler and associated components [that THS] removed did not contain mercury," which was the sole evidence offered by THS in support of its motion for summary judgment. *See* Decl. Brent at ¶ 6.

[12] The Court need not address THS's additional arguments regarding the remaining portions of O'Neal's declaration, which are superfluous to the Court's determination of the pending motion.

*C.     Summary*

Although Plaintiffs have not produced direct evidence that the old boiler contained mercury and that it was the source of the mercury contamination, they have presented sufficient circumstantial evidence that the old boiler likely contained mercury and that it was the most logical source of the mercury found on Plaintiffs' property. At trial, the factfinder may or may not agree, but a genuine dispute for trial exists.

## CONCLUSION

Defendant THS's Motion for Summary Judgment (Dkt. 30) is DENIED.

DATED this 29th day of April, 2013.

<u>/s/ Michael H. Simon</u>
Michael H. Simon
United States District Judge